IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TODD ANTHONY GLOVER, DD-7342,       )
    Petitioner,                                              )
                                                                        )
    v.                                                                 )  Civil Action No. 06-1688
                                                                        )
JAMES T. WYNDER, et al.,                         )
    Respondents.                                          )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Todd Anthony Glover for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional claim.

II. Report:

Todd Anthony Glover has presented a petition for a writ of habeas corpus. In an Order entered on December 26, 2006, the respondent and the District Attorney of Allegheny County were directed to respond and show cause, if any, why the relief sought should not be granted.

Glover is presently incarcerated at the State Correctional Institution at Dallas serving a fifteen to forty year sentence imposed following his conviction, by the court, of third degree murder at No. CC 9512510 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on January 6, 1997.[1]

---

[1] See: Petition at ¶¶ 1-6.

A timely appeal was taken to the Superior Court in which the issue raised was:

> Whether the trial court erred in denying the defendant's motion to suppress evidence when the defendant invoked his right to remain silent, a lengthy delay occurred between his arrest and arraignment, the admissions were a result of both physical and psychological coercions, and the defendant was a juvenile at the time of admission.[2]

On June 10, 1999, the judgment of sentence was affirmed.[3]

A petition for allowance of appeal to the Supreme Court of Pennsylvania was filed in which this same issue was presented for review.[4] On November 16, 1999, the petition for allowance of appeal was denied.[5]

On November 20, 2000, a timely post-conviction petition was filed and subsequently amended.[6] That petition was denied on July 8, 2005.[7]

An appeal was taken to the Superior Court in which the issue presented was:

> Appellate counsel gave ineffective assistance for failing to complain that trial counsel gave ineffective assistance for failing to object to the trial court's failure to use the proper sentencing guidelines.[8]

On June 6, 2006 the denial of post-conviction relief was affirmed.[9] A petition for allowance of

---

[2] See: Exhibit 9 to the response.

[3] See: Exhibit 11 to the response.

[4] See: Exhibit 12 to the response.

[5] See: Exhibit 13 to the response.

[6] See: Exhibit 15 to the response.

[7] See: Exhibits 17 and 18 to the response.

[8] See: Exhibit 20 to the response.

[9] See: Exhibit 22 to the response.

appeal to the Pennsylvania Supreme Court was filed raising this same issue.[10] On September 29, 2006, leave to appeal was denied.[11]

The instant petition was executed on December 12, 2006, and in it, Glover contends he is entitled to relief on the grounds that:

> 1. Trial court error denying petitioner's motion to suppress evidence when the petitioner invoked his right to remain silent; delay between arrest and arraignment [and] statement coerced.
>
> 2. Petitioner maintains that he was sentenced outside guidelines absent trial court's reasons for sentencing departure.[12]

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez,

---

[10] See: Exhibit 24 to the response.

[11] See: Exhibit 25 to the response.

[12] See: Petition at ¶ 12.

supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

4

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, it would appear that the petitioner has unsuccessfully raised these issues in the courts of the Commonwealth, and for this reason, they are properly raised here. The Commonwealth so agrees.[13]

The facts of this prosecution are set forth in the June 10, 1999 Memorandum of the Superior Court:

> On July 31, 1995, Pittsburgh police received a tip from a confidential informant regarding a man at 7329 Formosa Way in the Homewood section of the city. After providing a thorough physical description, the informant indicated the individual was smoking marijuana, carrying a firearm and was responsible for a recent shooting death.
>
> Detectives went to Formosa Way and saw appellant, who matched the description; the officers detained him, executed a protective pat-down search and found a pistol in his pocket. Based upon this, appellant was arrested and informed of his **Miranda** rights; searching him incident to the arrest, the officers additionally discovered crack cocaine in his pocket.
>
> Appellant was taken to the East Liberty Police Station and placed in an interview room. Detective Terrance O'Leary entered the room and, with appellant's participation, executed a pre-interrogation form. Appellant signed the form and indicated he was born December 9, 1976. The detective went over the form with appellant and read him his **Miranda** rights again; appellant confirmed he understood both the form and his rights.
>
> Detective O'Leary began questioning appellant about the shooting death of Mark Pierce. Although appellant denied knowledge of the crime, the detective took a Polaroid photo of him and showed it to an eyewitness to the shooting, who was waiting in another room. After the eyewitness positively identified appellant as the shooter, a warrant for his arrest was prepared, and he was taken for arraignment by Detective Richard McDonald.
>
> Following arraignment, appellant informed Detective McDonald he wanted to

---

[13] See: Answer of the Commonwealth at pp. 13-14.

make a statement about the death of Pierce. Detective McDonald drove appellant back to the East Liberty Station and re-seated him in the interview room. Appellant was again advised of his **Miranda** rights, and again signed an interrogation form acknowledging he understood his rights. He then confessed to the murder of Pierce.

Appellant later filed a motion to suppress this statement. Following a suppression hearing, this motion was denied. A bench trial ensued; appellant was found guilty of third degree murder, and on January 6, 1996, was sentenced to prison for fifteen to forty years.[14]

The first issue which the petitioner raises here is that his statement should have been suppressed after he had invoked his right to remain silent, due to the delay between his arrest and arraignment and due to its being involuntary.[15]

At the suppression hearing held on, November 4, 1996 ("SH") evidence was presented demonstrating that in response to information regarding a black male who was smoking marijuana and in possession of a firearm and who was suspected of involvement in a homicide the police approached the petitioner (SH 4-5, 6, 10); that he was patted down and a gun and crack cocaine were recovered (SH 6); that he was arrested on the gun charge (SH 7); that he was advised of his Miranda rights and he admitted to selling crack cocaine (SH 8); that he was transported to the police station where he was again advised of his Miranda rights (SH 13, 20); that the petitioner stated he desired to speak to an attorney (SH 13); that he represented that he was 18 years old (SH 13, 17, 25); that he denied knowledge of the homicide (SH 14-15); that after an eyewitness

---

[14] See: Exhibit 11 at pp.1-2.

[15] Although not raised here, the petitioner contended in the state courts that his confession was subject to dismissal on the grounds that he was a juvenile. As the Superior Court observed, on two separate occasions the petitioner misstated his age to the police so that he represented that he was over eighteen rather than seventeen. However, the Superior Court also concluded that this was a non-issue. (Exhibit 11 to the answer).

6

to the homicide identified the petitioner as the culprit, a criminal complaint was prepared (R.15-16); that no one asked to speak to the petitioner (SH 20); that the petitioner was transported to the coroner's office to be arraigned on the homicide charge (SH 23); that following his arraignment, the petitioner stated that he wished to talk about the homicide (SH 24); that he was again advised of his Miranda rights (SH 24); that he stated that he understood those rights and signed a waiver form (SH 23-25); that he did not ask to speak to counsel (SH 28); that his mother did not present herself (SH 28, and that he admitted the homicide and his statement was recorded (SH 28).

Unfortunately, pages 36-50 of the suppression hearing transcript are missing but we note the relevant portions of the petitioner's testimony in which he stated that he did not wish to speak to the police (SH 52-53); that an officer smacked him once (SH.54, 60); that as a result of the assault, he made a statement but that statement was not truthful (SH 55,58); that he had been informed of his rights (SH 56); that he had represented that he was 18 at the time of his arrest (SH 57) and that he did possess the gun and narcotics when arrested (SH 58).

Thus, the initial issue to be resolved concerns whether or not it was Constitutionally defective to fail to suppress the petitioner's confession. In his July 8, 1998 Opinion, the trial judge reviewed these allegations in light of the testimony presented and concluded:

> [T]he Court heard the testimony of the witnesses on this matter and accepted the testimony of the police officers of being credible and rejected the testimony of the defendant and his witnesses as being not credible. Credibility determinations are within the sole province of the judge as the fact finder in a suppression hearing ... Having found the testimony of the police officers credible, the Court concluded that the Commonwealth met its burden of showing by a preponderance of the evidence that the statement was voluntarily obtained. Testimony of the officers establishes that at several points during the interaction of the defendant he was verbally advised of his rights pursuant to the Miranda decision; that he read a pre-

interrogation warning form that set forth those rights and that he executed that form. Accordingly, the Court was correct in determining that the statement was not obtained as a result of coercion police tactics.[16]

Clearly, the fact finder is the one to resolve issues of credibility. And the burden raised on the party challenging that determination to demonstrate by clear and convincing evidence that the decision was erroneous. Campbell v. Vaughn, 209 F.3d 280 (3d Cir.2000).

In attempting to challenge this finding, the petitioner also alleges that he was 17 at the time he confessed; that neither his mother nor an attorney was present; that there was unnecessary delay between his arrest and arraignment and that his statement was not voluntary.

There is no doubt that at the time of the events the petitioner was 17 years old. However, as he freely admitted during his testimony he represented to the police that he was 18 years old (SH 13,17, 25). In addition, the Superior Court observed that a "juvenile's confession without an adult present will not automatically be suppressed. **In re Pack**, 616 A.2d 1006 (Pa.Super.1992), *appeal denied*, 634 A.2d 1117 (Pa.1993)."[17] Rather, the Court held that any determination must be based on the "totality of the circumstances" which in the present case demonstrate that the petitioner "was aware of his rights, knowingly waived them on multiple occasions, and voluntarily confessed to the murder."[18] Also, any further argument which the petitioner makes in this regard is based on state law, and not subject to review here. Johnson v. Rosemeyer, 117 F.3d 104 93d Cir.1997).

---

[16] See: Exhibit 8 to the response at pp.3-4. We also observe that based on our review of the truncated suppression hearing transcript, we likewise conclude that the sole issue presented to the court was one of credibility.

[17] See: Exhibit 11 to the response at p.4.

[18] Id.

Additionally, the petitioner refers to the delay between his arrest and confession as grounds for suppression. The state rule on which the petitioner relies is set forth in Commonwealth v. Davenport, 370 A.2d 301 (Pa.1977) which mandates the exclusion of confessions made during any delay of over six hours between the individual's arrest and his arraignment. In the instant case, the petitioner's statements were made following his arraignment and thus this rule is not applicable. Additionally, as a matter of state law it does not provide a basis for relief here. Johnson v. Rosemeyer supra.

The other basis upon which the petitioner claims he is entitled to relief is that his sentence was imposed beyond the state sentencing guidelines and without any explanation from the trial court for doing so.[19] Again this is a matter of state law, and so long as the imposed sentence is within the statutory sentencing range, it will not provide a basis for federal habeas corpus relief. Burden v. Filion, 421 F.Supp.2d 581 (WDNY 2006).

Pennsylvania defines murder of the third degree as a felony of the first degree. 18 Pa.C.S.A. 2502(c), and the possible maximum sentence is 40 years. 18 Pa.C.S.A. 1102(d). Since the petitioner was sentenced to fifteen to forty year period of imprisonment, his sentence is within the statutory maximum and not cognizable here.

Accordingly, because his claims are without merit, it is recommended that the petition of Todd Anthony Glover for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional claim.

Within thirteen (13) days after being served, any party may serve and file written

---

[19] Although raised in the courts of the Commonwealth in the context of ineffective assistance of counsel we need not address this issue which is not raised here since there is no federal basis for challenging the sentence imposed.

objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

Entered: March 29, 2007                   s/Robert C. Mitchell,
                                                United States Magistrate Judge